IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

| | | |
|---|---|---|
| JEROME SHAUNNESSEY, | § § § | |
| Plaintiff, | § | Civil Action No. _____ |
| vs. | § § | |
| MONTERIS MEDICAL, INC. | § § | JURY TRIAL DEMANDED |
| Defendant. | § § § | |

## COMPLAINT

Plaintiff Jerome Shaunnessey ("Shaunnessey") brings this action against the Defendant Monteris Medical, Inc. ("Monteris") and for its cause of action alleges:

### The Parties

1. Jerome Shaunnessey is an individual residing at 5601 Bay Blvd. No. 502, Port Richey, Florida 34668.

2. Upon information and belief, Monteris Medical, Inc. is a corporation organized and existing under the laws of the State of Delaware with its principal place of business at 19575 Chimo West, Wayzata, MN, 55391. Monteris may be served with process by serving its registered agent, The Corporation Trust Company, Corporation Trust Center, 1209 Orange Street, Wilmington, DE 19801.

### Jurisdiction and Venue

3. This is a civil action arising under the patent laws of the United States, Title 35 United States Code and the Federal Declaratory Judgment Act, 28 U.S.C. §§ 2201 and 2202.

4. This Court has subject-matter jurisdiction pursuant to 28 U.S.C. §§ 1338(a), 2201 and 2202.

5. Venue is proper in this Court under 28 U.S.C. §§ 1391(b), (c) and (d), and 1400(b).

**Shaunnessey's Invention**

6. This dispute involves the current and/or impending infringement by Monteris of U.S. Patent No. 5,823,941 (the '941 patent) entitled "Apparatus For Directing the Movement of an Endoscopic Surgical Laser Especially For Use In Vaporizing Brain Tumors." A copy of the '941 patent is attached hereto as Exhibit A.

7. The '941 patent describes a revolutionary apparatus that uses relatively non-invasive techniques and MRI images to precisely direct the deposition of laser energy within a brain tumor in order to kill the tumor. The invention is intended to provide brain surgeons with a tool to destroy tumors while minimizing the risk of tragic side effects that are often suffered with more traditional surgical methods, such as a craniotomy.

8. Shaunnessey is the sole owner and inventor of the '941 patent which issued on October 20, 1998.

9. Shaunnessey was inspired to develop the invention claimed in the '941 patent when his fiancé was subjected to two craniotomies to remove brain tumors and he witnessed first-hand the resulting scarring and unnecessary and tragic neurological damage. Now at age 74, Mr. Shaunnessey has dedicated a substantial amount of his time, his finances, and his inventive efforts to developing a less invasive method of killing brain tumors and commercializing such efforts.

10. On February 23, 2005, in an attempt to license the '941 patent, Shaunnessey sent a letter to Monteris informing them of the '941 patent and inviting licensing negotiations. When Shaunnessey did not receive a reply to his letter he hired an

agent that sent a letter to Monteris on December 12, 2005 inviting Monteris to examine the '941 patent and informing Monteris that Shaunnessey would make the '941 patent available for license on reasonable terms which he also received no reply to.

### Monteris' AutoLITT System and Activity

11. Upon information and belief, Monteris is currently seeking FDA approval for their AutoLITT system which uses and infringes Shaunnessey's patented techniques to precisely direct the deposition of laser energy within a brain tumor.

12. Upon information and belief, Monteris exhibited the AutoLITT system at the following:

> a. the February 23-25, 2004 MedTech Insights Investment in Innovation Conference in Irvine, California;
>
> b. the October 21-22, 2004 MedTech Insights Investment in Innovation Conference in Boston, Massachusetts;
>
> c. the April 16-21, 2005 American Association of Neurological Surgeons ("AANS") Annual Meeting in New Orleans, Louisiana;
>
> d. the April 22-27, 2006 AANS Annual Meeting in San Francisco, California;
>
> e. the September 25-27, 2006 Bio Mid-America Venture Forum in Cleveland, Ohio;

13. Upon information and belief, the AutoLITT system successfully passed evaluation tests in July, 2005.

14. Upon information and belief, Monteris completed studies using the AutoLITT system on swine in 2006.

15. Upon information and belief, the AutoLITT system is a Class III medical device, subject to FDA Pre-Market Approval regulations.

16. Upon information and belief, Monteris has filed for Pre-Market Approval with the FDA.

17. Upon information and belief, Monteris has marketed its AutoLITT system in the United States, describing its advertised benefits and price, in a manner that is tantamount to an offer for sale, pending FDA approval.

18. Upon information and belief, the design of the Monteris AutoLITT system is now sufficiently set, such that the AutoLITT design is not likely to change in any substantial manner between now and the time Monteris receives FDA approval.

19. Upon information and belief, the design of the Monteris AutoLITT system is similar to the design depicted in U.S. Patent No. 6,418,337, issued to Torchia, et al., assigned to Autolitt, Inc., July 9, 2002, almost four years after the date of Shaunnessey's '941 patent.

**Cause of Action for Declaratory Judgment for Patent Infringement**

20. Shaunnessey re-alleges and incorporates by reference the allegations in paragraphs 1 through 19 above.

21. Monteris has announced that it will complete *in vivo* studies with its AutoLITT system in early 2007, that it will conduct Pre-Clinical Canine Trials and First-use-in-human "Feasibility Trials" in 2007, that it will initiate Phase I Clinical Trials in 2008, that it will initiate Phase II human trials in the US and Canada in 2009, and that it anticipates to begin marketing in the US in 2010.

22. Monteris has advertised that pre-clinical trials using the *final "go-to-market"* system design and protocols will be conducted in the first half of 2007.

4

23. Upon receipt of regulatory approval to market and sell the AutoLITT system in the United States, Monteris' manufacture, importation, use, sale, and/or offer to sell the AutoLITT system in the United States will infringe, either literally or under the doctrine of equivalents, one or more claims of Shaunnessey's '941 patent.

24. Despite action by Shaunnessey demonstrating his intent to enforce his patents against Monteris' marketing and sale of the AutoLITT system in the United States, Shaunnessey is informed and believes that Monteris has demonstrated a refusal to desist from continued and/or impending infringement of the '941 patent, such that a definite and concrete controversy now exists between Shaunnessey and Monteris regarding Monteris' continued and/or impending infringement of one or more claims of the '941 patent.

25. Shaunnessey seeks a judicial determination and declaration that Monteris is currently infringing or, upon FDA approval will infringe one or more claims of Shaunnessey's '941 patent by making, importing, using, selling, and/or offering for sale the AutoLITT system. Such a determination and declaration is necessary and appropriate at this time in order that the parties may ascertain their respective rights and duties.

### Authority for Declaratory Relief

26. Shaunnessey recognizes that 35 U.S.C. § 271(e)(1) renders activities that would otherwise constitute patent infringement noninfringing if they are undertaken for the purpose of developing and submitting to the Food and Drug Administration information necessary to obtain marketing approval for a medical device under § 515 of the Federal Food, Drug, and Cosmetic Act, 90 Stat. 552, 21 U.S.C. § 360e (FDCA). *Eli Lilly & Co. v. Medtronic, Inc.*, 496 U.S. 661, 663–64 (1990).

27.   Shaunnessey also realizes that even when an actual controversy exists, the exercise of a court's jurisdiction over a declaratory judgment action is discretionary, and that a court may properly dismiss, without prejudice, a patent holder's declaratory judgment action against a defendant that has only begun clinical trials of its device. *See, for e.g. Teletronics Pacing Sys., Inc. v. Ventrilex, Inc.*, 982 F.2d 1520, 1526–27 (Fed. Cir. 1992). In those cases where dismissal was affirmed, the reviewing courts have looked for circumstances that would justify dismissal, such as the degree of certainty that the approved device would be the same device that began clinical trials. *Id.* However, Shaunnessey is not aware of any authority that would deny this Court its discretion to hear this declaratory judgment action by requiring the dismissal of any declaratory judgment action brought by a patent holder against a defendant conducting clinical trials of a medical device under these circumstances.

28.   Indeed, there is authority for this Court to resolve this controversy. Considering the experimental use or de minimus use exceptions to patent infringement outside the context of medical devices, courts have reasoned that displaying the infringing product for marketing purposes does not qualify as an experimental use. For example, where a patent holder brought suit against a defendant that displayed and distributed the infringing product at a trade show and to prospective customers, a district court found that the defendant could not maintain the experimental use exemption or the de minimus use defense. *Moore U.S.A. Inc. v. Standard Register Co.*, 144 F. Supp. 2d 188, 201 (W.D. NY 2001). And when considering an infringing medical device, a district court reasoned that where it is evident that ultimate product approval by the FDA would still result in an infringing design, the issue of infringement is properly before the court. *Infinitech, Inc. v. Vitrophage, Inc.*, 842 F. Supp. 332, 337–38 (N.D. Ill. 1994).

The *Infinitech* court was considering a defendant patent holder's motion to dismiss an infringer's declaratory judgment action, and recognized that the court may use its discretion in many circumstances and dismiss a patent holder's declaratory judgment action before the infringing product moves beyond clinical testing. *Id.* at 337. But the court also recognized that even before clinical testing is finished, an infringer's conduct may "evince[ ] the kind of 'concrete steps' or 'meaningful preparation' needed to establish an actual controversy under 'all the circumstances.'" *Id.* at 337–38.

29. The conduct of Monteris, as set out above, clearly establishes that an actual controversy exists under all the circumstances. Monteris has publicly stated that its design is in the "final go-to-market" form. Monteris has advertised its product at no less than five trade shows throughout the United States. Monteris has published marketing materials that list the price for its infringing product. These are not the actions that are necessary for the sole purpose of submission of information to obtain federal regulatory approval, or even reasonably related to the development of such information. These actions are tantamount to an offer of sale and are an infringement. At the age of 74, Mr. Shaunnessey rightfully has a legitimate and immediate interest in obtaining a declaration that the Monteris device, which now has its design set and ready for market, infringes his patent.

## Demand for Jury Trial

30. Shaunnessey demands a jury trial on all claims and issues.

## Prayer for Relief

WHEREFORE, Shaunnessey requests that the Court enter judgment in his favor and against Monteris as follows:

A.  Declaring that the '941 patent is currently infringed or will be infringed by Monteris' importation, use, offer for sale, and/or sale in the United States of the AutoLITT system;

B.  Ordering that the effective date of any FDA approval of defendant Monteris' application for the AutoLITT system and its use be not earlier than the expiration date of the '941 patent;

C.  Awarding plaintiff its damages; and

D.  Awarding plaintiff his reasonable attorneys' fees, interest, and costs of this action, and such other and further relief as this Court may deem just and proper.

Date: Aug. 2, 2007

THERESA FISET, LLC

_____
Theresa Fiset
Fla. Bar No. 0149098
1471 S. Missouri
Clearwater, Florida 33755
Telephone: (813) 928-6501
Facsimile: (512) 369-3194
Local Counsel for Plaintiffs

and

GOLDSTEIN, FAUCETT & PREBEG, LLP
Eddward W. Goldstein
Matthew J.M. Prebeg
Califf T. Cooper
1177 West Loop South, Suite 400
Houston, Texas 77027
Telephone: 713-877-1515
Facsimile: 713-877-1737
Counsel for Plaintiffs