UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

JEROME SHAUNNESSEY,

    Plaintiff,

v.                                      CASE NO. 8:07-CV-1401-T-27MAP

MONTERIS MEDICAL, INC.,

    Defendant.

_____/

## REPORT AND RECOMMENDATION

This is a patent infringement action involving a medical device that has not yet been approved by the Federal Drug Administration ("FDA") nor subjected to human clinical trials. Despite this, Plaintiff has sued Defendant seeking a declaratory judgment that Defendant's device infringes or will infringe his patent (the "'941 patent"). Defendant, in response, has moved to dismiss the complaint claiming the Plaintiff has failed to satisfy the Declaratory Judgment Act's "actual controversy" demands and the Court lacks personal jurisdiction over the Defendant (doc. 10). After consideration, I agree and recommend that Defendant's motion be granted and Plaintiff's case be dismissed without prejudice.[1]

*A. Background*

Plaintiff is the sole owner and inventor of the '941 patent, which covers an apparatus used to direct the movement of a surgical laser within the brain to kill brain tumors. Defendant is currently performing animal testing of the "AutoLITT system" (the "Device") which, like the

---

[1] The district judge referred the matter to me for a report and recommendation (doc. 28). *See* 28 U.S.C. § 636 and Local Rule 6.01(b).

'941 patent, directs a surgical laser within the brain to kill brain tumors.[2]  To date, Defendant has not submitted an application to the FDA for approval of the Device.  Nonetheless, the Defendant has exhibited the AutoLITT system on at least five separate occasions in California, Massachusetts, Louisiana, and Ohio.[3]  Aware of Defendant's device, the Plaintiff sent two letters to Defendant informing Defendant of the '941 patent and inviting licensing negotiations.  When the Defendant did not respond, the Plaintiff brought this action seeking a declaration that Defendant is currently infringing or, upon FDA approval, will infringe his '941 patent.  Defendant now moves to dismiss pursuant to Rule 12(b)(1) for lack of jurisdiction and Rule 12(b)(2) of the Federal Rules of Civil Procedure for lack of personal jurisdiction.[4]

   B.  *Discussion*

      1. *case or controversy*

The Declaratory Judgment Act (the "Act"), which governs declaratory actions in patent suits, explicitly requires that an "actual controversy" exist before a court may decide whether to

---

[2] Monteris Medical, Inc. (US) is a start-up medical device company incorporated under the laws of the state of Delaware.  Monteris Medical, Inc. (Can), the Canadian parent corporation, established Monteris Medical, Inc. (US) as a wholly-owned subsidiary in 2006 to address business development, regulatory and clinical activities in the United States.  At the time of filing Defendant's Motion to Dismiss, Monteris Medical, Inc. (US) had not yet undertaken any activities.  Rather, Monteris Medical, Inc. (Can) had undertaken all activities in the United States up until that time.  Plaintiff alleges that Monteris Medical, Inc. (US) is the "alter ego" of Monteris Medical, Inc. (Can) (doc. 27).  Without making a determination on the divisibility of the two companies and unless otherwise stated, "Defendant" refers collectively to Defendant Monteris Medical, Inc. (Can) and Defendant Monteris Medical, Inc. (US).

[3] Defendant disputes that the "system" has been exhibited on these occasions contending that the only physical component of the system shown at these meetings was a probe (doc. 10).

[4] Although the Plaintiff cites Rule 12(b)(6) (the failure of the complaint to state a cause of action) as the operative rule for its jurisdictional challenge, the appropriate rule for "case or controversy" issues under Article III is Rule 12(b)(1).  *See Super Stack Mfg. v. Chase Packaging Corp.,* 57 F.3d 1054 (Fed. Cir. 1995) (applying Rule 12(b)(1) to "case or controversy" issues).

2

grant declaratory relief.  *See* 28 U.S. C. § 2201.   That requirement extends only to cases and controversies justiciable under Article III of the Constitution.  *Teva Pharmaceuticals USA, Inc. v. Novartis Pharmaceuticals Corp.*, 482 F.3d 1330, 1336 (Fed. Cir. 2007); *SanDisk Corp. v. STMicroelectronics, Inc.,* 480 F.3d 1372, 1378 (Fed. Cir. 2007).[5]  Accordingly, the party seeking declaratory relief must show from the record evidence that a substantial controversy exists "'between the parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment.'"  *Benitec Australia, Ltd. v. Nucleonics, Inc.*, 495 F.3d 1340, 1343 (Fed. Cir. 2007), quoting *MedImmune, Inc. v. Genentech, Inc.*, __ U.S. __, 127 S.Ct. 764, 771, 166 L.Ed.2d 604 (2007); *see also Micron Technology, Inc. v. Mosaid Technologies, Inc.,* 2008 WL 540182 *3 (Fed. Cir.2008) ("The standard for jurisdiction thus depends in part on the record evidence for a case or controversy within the meaning of the Declaratory Judgment Act.").  In short, the dispute should:

> "be definite and concrete, touching the legal relations of parties having adverse legal interests; and that it be real and substantial and admit of specific relief through a decree of a conclusive character, as distinguished from an opinion advising what the law would be upon a hypothetical state of facts.  Basically, the question in each case is whether the facts alleged, under all the circumstances, show that there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment."
>
> *MedImmune,* 127 S.Ct. at 771.

Part of the Article III calculus is whether the action is ripe for adjudication.  *Teva Pharmaceuticals,* 482 F.3d at 1337 ("The doctrine of ripeness focuses on the conduct of the

---

[5] Federal Circuit law governs case or controversy issues involving declaratory judgment determinations about patent infringement or validity.  *See Adenta GmbH v. OrthoArm, Inc.,* 501 F.3d 1364, 1368 (Fed. Cir. 2007).

defendant to determine whether the defendant[']s actions have harmed, are harming, or are about to harm the plaintiff."). A controversy is ripe for adjudication if the question presented is "'fit for judicial review,'" such that the controversy is entirely or substantially a question of law and the postponement of a decision would work a substantial hardship on the challenging party. *Id.,* citing *Abbott Labs. v. Gardner*, 387 U.S. 136, 149-150 (1967).

Plaintiff, anticipating the Defendant's motion to dismiss, confronted these Article III hurdles in his complaint.[6] Thus, he attempts to establish a justiciable controversy by first alleging that Defendant is currently infringing its '941 patent because the Defendant exhibited the allegedly infringing Device at various conferences and trade shows. Further, he concedes that federal law [*see* 35 U.S.C. § 271(e)(1)[7]] exempts activities that "would otherwise constitute patent infringement as non-infringing if they are undertaken for the purpose of developing and submitting to the Food and Drug Administration information necessary to obtain marketing approval for a medical device under § 515 of the Federal Food, Drug, and Cosmetic Act, 90 Stat. 552, 21 U.S.C. § 360e (FDCA)."[8] *See Eli Lilly & Co. v. Medtronic, Inc.,* 496 U.S. 661, 663-664 (1990)." *See* (doc. 9 ¶ 26). In fact, the Supreme Court has explicitly held that medical devices subject to premarket approval under the FDCA fall within the clinical trial exemption

---

[6] Oddly, this tactic goes beyond that envisioned by Fed. R. Civ. P. 8(a).

[7] Section 271(e)(1) states in relevant part:
> "It shall not be an act of patent infringement to make, use, offer to sell, or sell within the United States or import into the United States a patented invention...solely for uses reasonably related to development and submission of information under a Federal law which regulates the manufacture, use or sale of drugs or veterinary biological products.

[8] The Federal Food, Drug, and Cosmetic Act is a federal law which regulates the manufacture, use or sale of drugs or veterinary biological products within the meaning of Section 271(e)(1). *See Merck KGAA v. Integra Lifesciences I, Ltd., et al.,* 545 U.S. 193, 196 (2005).

enumerated in 35 U.S.C. § 271(e)(1). *Eli Lilly,* 496 U.S. at 673-674.  Nonetheless, Plaintiff asserts in his complaint that it does not apply because the Defendant solicited the Device to encourage investors and to obtain approval for the Device.  That solicitation, so the Defendant reasons, constituted an act of infringement (doc. 9 ¶ 29).   Additionally, the Plaintiff contends that Defendant will inevitably infringe on the '941 patent if it receives regulatory approval to market and sell the allegedly infringing Device (doc. 9 ¶ 24).

These arguments do not shoulder Plaintiff's Article III burden.  Most of these exhibitions are better described as "investment shows" because Defendant attended those shows to seek out potential investors.  Seeking investment sources is clearly an action in furtherance of Defendant's development of the Device to submit to the FDA for approval.  Nor does Plaintiff dispel the Defendant's § 271(e)(1) exemption cover.  Lastly, Plaintiff fails to meet the "immediacy" and "reality" criteria warranted for the issuance of a declaratory judgment. *Sierra Applied Sciences, Inc. v. Advanced Energy Industries, Inc.*, 363 F.3d 1361, 1378 (Fed. Cir. 2004).  When making a determination on "immediacy", a court should look to the period of time between the date on which the party filed the complaint and the date on which potentially infringing activities will begin. *Id.* at 1378-1379.  The greater the length of time, the more likely the case lacks immediacy. *Id.* at 1379.  Further, when making the determination on "reality", a court should determine "whether the design of the potentially infringing subject of the declaratory-judgment suit was substantially *fixed*, particularly with respect to its potentially-infringing characteristics, on the date the complaint was filed." *Id.* (emphasis in original).  "The greater the variability of the subject of a declaratory-judgment suit, particularly as to its potentially infringing features, the greater the chance that the court's judgment will be purely

advisory, detached from the eventual, actual content of that subject-in short, detached from eventual reality." *Id.* Class III medical devices, as defined by 21 U.S.C. § 360c(a)(1)(c), cannot be commercialized without FDA approval of a premarket approval ("PMA") application in accordance with 21 U.S.C. § 360e. *Medtronic, Inc. v. Lohr*, 518 U.S. 470, 477 (1996). The PMA application provides the FDA with a "'reasonable assurance'" that the device is both safe and effective. *Id.* Defendant has not even submitted a PMA application to the FDA. In fact, Defendant estimates that it is at least three years away from submitting an application to the FDA. Even upon submitting a PMA application, the FDA approval process takes an average of 1,200 hours to review each submission before approving the device for commercialization. *Id.* Given these circumstances, Plaintiff has not shown that the Device's current design will be the one that the FDA approves or that the Defendant will eventually produce and market. Moreover, the date on which the potentially infringing activities will begin is most likely years from the date on which Plaintiff filed his First Amended Complaint.

      Irrespective, and assuming that an actual controversy exists, the district court is vested with discretion to decline to hear a declaratory judgment action. *Telectronics*, 982 F.2d at 1526. The district court must possess a well-founded reason for declining to hear a declaratory judgment action. *Electronics For Imaging, Inc. v. Coyle*, 394 F.3d 1341, 1345 (Fed. Cir. 2005). Usually, a court will not dismiss a declaratory judgment action where an actual controversy exists and the issuance of a declaratory judgment would settle the legal relations in dispute and afford relief from uncertainty or insecurity. *SanDisk*, 480 F.3d at 1383. Accordingly, if the district court finds that, upon application of the legal standard articulated in *MedImmune,* the facts alleged under all the circumstances show a substantial controversy between parties with

adverse legal interests of sufficient immediacy and reality to warrant the issuance of a declaratory judgment, the court should hear the action. *Micron Technology*, 2008 WL 540182 *4.

Here, the district court should decline to hear this declaratory judgment action because a substantial controversy of sufficient immediacy and reality does not warrant the issuance of a declaratory judgment. Defendant has not yet tested the Device on humans, the Device is years away from FDA approval, and Defendant is prohibited from distributing or selling the Device in its current state. Further, neither party can opine that the Device approved by the FDA will be the same device, or even substantially the same device, that exists presently. However, even if the district court determines an actual controversy exists, the court should decline to hear this action because the issuance of a declaratory judgment would conflict with the purpose of the 35 U.S.C. § 271(e)(1) exemption and would simply serve as an advisory opinion contravening the objectives for which the Declaratory Judgment Act was created.

### 2. *lack of personal jurisdiction*

To properly exercise personal jurisdiction over a non-consenting party outside the forum state, the district court must engage in a two-step inquiry. *Hildebrand v. Steck Mfg. Company*, 279 F.3d 1351, 1354 (Fed. Cir. 2002). The first step in the inquiry involves a determination whether the defendant is amenable to service of process under the applicable state long-arm statute. *Id.* Accordingly, Plaintiff must first show that Defendant engaged in an activity that would subject Defendant to the jurisdiction of the courts of the state of Florida pursuant to Florida Statutes § 48.193. Plaintiff can establish applicability of the state long-arm statute under one of two theories. First, specific jurisdiction requires that Plaintiff show Defendant

purposefully directed its activities at residents of Florida and that the alleged injuries arose out of or are related to those alleged activities. *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472 (1985). Alternatively, general jurisdiction requires Plaintiff to establish that Defendant engaged in continuous and systematic contacts with Florida. *Helicopteros Nacionales de Columbia S.A. v. Paul*, 466 U.S. 408, 415 (1983). Plaintiff alleges that such contacts as telephone calls, emails, the purchasing of parts, and a former vendor relationship[9] in the state of Florida should subject Defendant to personal jurisdiction.[10]

Section 48.193(1)(b) provides the only reasonable basis upon which Plaintiff could assert that Defendant's alleged activities give rise to personal jurisdiction pursuant to the long-arm statute. In Florida, the commission of a tortious act within the state does not require a defendant's physical presence. *Wendt v. Horowitz,* 822 So.2d 1252, 1260 (Fla. 2002). In fact, the committing of a tortious act in Florida "can occur through the nonresident defendant's telephonic, electronic, or written communications into Florida" provided that the cause of action arises from those communications. *Id.*; *See Horizon Aggressive Growth, L.P., v. Rothstein-Kass, P.A.,* 421 F.3d 1162, 1168 (11th Cir. 2005). To establish jurisdiction based upon these types of activities, "connexity" must exist between the out-of-state communications and the cause of action, meaning that the cause of action requires proof of either the existence or content of the communications into Florida. *Horizon*, 421 F.3d at 1168. No "connexity" exists in the present

---

[9] Defendant alleges that the contacts relating to this vendor relationship have transferred to Minnesota and Colorado (doc. 10).

[10] In Plaintiff's Memorandum in Opposition to Defendant's Motion to Dismiss, Plaintiff lists the contacts in furtherance of the allegedly infringing activity based on Plaintiff's First Set of Interrogatories, Response to Interrogatory No. 4 and Exhibit A attached thereto.

action because Plaintiff's claim for declaratory judgment does not require the existence or content of Defendant's communications nor arises from communications sent between Defendant and third parties as is the case for claims of defamation, for example.[11]

The second step in the inquiry involves a determination whether the culmination of the defendant's activities within the forum state satisfies the minimum contacts requirement of the due process clause. *Hildebrand*, 279 F.3d at 1354. A district court may properly exercise personal jurisdiction where the defendant engaged in such minimum contacts with the forum state that the defendant should "'reasonably anticipate being haled into court there.'" *Red-Wing Shoe Co. Inc. v. Hockerson-Halberstadt, Inc.*, 148 F.3d 1355, 1359 (Fed. Cir. 1998), quoting *World-Wide Volkswagen Corp. v. Woodson,* 444 U.S. 286, 297, 100 S.Ct. 559, 62 L.Ed.2d 490 (1980). The Federal Circuit has held that "whether an exercise of personal jurisdiction satisfies due process in a patent case depends on three factors: (1) whether the defendant 'purposefully directed' its activities at residents of the forum; (2) whether the claim 'arises out of or relates to' the defendant's activities with the forum; and (3) whether assertion of personal jurisdiction is 'reasonable and fair'." *Silent Drive, Inc. v. Strong Industries, Inc*., 326 F.3d 1194, 1201-1202 (Fed. Cir. 2003), quoting *Inamed Corp. v. Kuzmak,* 249 F.3d 1356, 1360 (Fed. Cir. 2001) (citation omitted). Similar to the analysis under the Florida long-arm statute, Plaintiff cannot establish the "minimum contacts" required by the due process clause. The culmination of

---

[11] *See Carlyle v. Palm Beach Polo Holdings, Inc.,* 842 So.2d 1013, 1017 (Fla. 4th DCA 2003)(distinguishing the instant case from cases where a nonresident defendant allegedly "made telephonic or written communications into Florida which were in and of themselves tortious" stating that "[a]ppellants have neither alleged nor shown evidence to establish that the communications were themselves tortious, nor that the several alleged causes of action – abuse of process, slander of title, and tortious interference – arose out of such communications.").

Defendant's activities in Florida, including phone calls, emails, the purchase of component parts, and a former vendor relationship, does not rise to the level required by the due process clause such that Defendant should anticipate being haled into a Florida court.  Further, an assertion of personal jurisdiction over a Canadian corporation or its wholly-owned subsidiary whose only location in the United States is the home address of the CEO in Lake Forest, Illinois, would not prove reasonable or fair under the facts alleged by Plaintiff.  Therefore, Plaintiff has failed to show that Defendant's actions constitute a proper basis for establishing personal jurisdiction over Defendant.  When the complaint lacks allegations establishing personal jurisdiction, dismissal is appropriate.  *See Pennington Seed, Inc., v. Produce Exchange No. 299,* 457 F.3d 1334, 1344 (Fed. Cir. 2006)("On its face, the complaint lacks sufficient allegations of minimum contacts to establish personal jurisdiction. Thus, the district court did not err by dismissing the First Amended Complaint for lack of personal jurisdiction.").

    C.    *Conclusion*

Accordingly, it is

RECOMMENDED:

1.    Defendants' Motion to Dismiss or, In The Alternative, For Summary Judgment (doc. 10) be **GRANTED**, and the First Amended Complaint be **DISMISSED WITHOUT PREJUDICE**.

IT IS SO REPORTED at Tampa, Florida, on this 11th day of March, 2008.

*Mark A. Pizzo*
MARK A. PIZZO
UNITED STATES MAGISTRATE JUDGE

**NOTICE TO PARTIES**

      Failure to file and serve written objections to the proposed findings and recommendations contained in this report within ten days from the date it is served on the parties shall bar an aggrieved party from a *de novo* determination by the district court of issues covered in the report. It shall also bar the party from attacking on appeal the factual findings in the report accepted or adopted by the district court except upon grounds of plain error or manifest injustice. 28 U.S.C. § 636(b)(1)(C); Local Rule 6.02; *Nettles v. Wainwright,* 677 F.2d 404 (5th Cir. 1982) (*en banc*).

cc:    The Honorable James D. Whittemore
        Counsel of Record